Case No. 18-0871, Gordon Berry v. City of Chicago When your case is called, please approach the podium, state your name and whom you represent. Please keep your voice modulated because that is not an enhancer, it's just a recording device. The case was actually called while all of this was going on, so counsel, please go ahead. Good afternoon, Your Honors. My name is Mark Voskis and I represent the plaintiff appellants in this matter. Good afternoon, Your Honors. My name is Chris Heck and I represent Defendant Apple Lee, City of Chicago. Whenever you're ready, counsel. Remember, you have 15 minutes per side, but save a few minutes for rebuttal. Thank you. Good afternoon, Justice Harris, Justice Cunningham, and Justice Connors. May it please the Court. I'm here today on behalf of the appellants, Plaintiffs Gordon Berry and Ilya Payson, both of whom reside in homes with lead service lines in the City of Chicago and the neighborhoods most affected by the allegations in the complaint, that is the far north sides and south sides of Chicago. Mr. Berry and Mr. Payson filed the lawsuit because, unbeknownst to them, construction projects performed by the Water Department of the City of Chicago harmed them in two ways. First, that construction caused an immediate release of lead into their water supply, exposing them to a dangerous contaminant. And two, that construction damaged their property, irreversibly, and that is their lead service lines, subjecting it now to the effects of what is known as galvanic corrosion. Counsel, what's their present injury? Well, the present injury, Your Honor, is, well, I'll point it this way. So medical monitoring is a type of remedy that seeks to remedy a very specific situation. And that is that a defendant has created this environment where medical testing is now necessary for a certain set of people. Okay, so it's a remedy. It's not part of the prime official case, cause of action? No. Medical monitoring is most accurately a remedy for a negligence claim. Okay. So have they been injured? Pardon? Have your plaintiffs been injured? Yes. Any personal injury, tort-wise? Yes. So it is, in essence, a personal injury claim where the injury itself is the need to be tested. So you can think of it this way. There's a company that spills toxic waste into a river. There's no dispute that the spill is negligent. There's no dispute that that waste causes cancer. And there's no dispute that everyone who lives along that river must now be tested for those various cancers. What medical monitoring does is says, well, the defendant's negligence created this need to be tested. And therefore, the defendant should pay for that testing. Counsel, isn't an injury a wrongful act resulting in damage? Right? Do you agree with me? In injury? Well, yes, in the general sense. Yes. That's good. Yeah, I agree. And so damages are what compensates you for the injury. So payment of cost for damage or injury would be what you're talking about, is it not? Aren't we talking about two different things, injury and damage? Damages for the injury? Well, I think what you're alluding to is the nature of the relief. So the injury. No, I want to know if there's a present injury. The present injury is the cost of the test itself. It is a financial injury. And that is precisely what Lewis E. Lead Industry said. His court said in that case. Well, do they consider Mormon in that case? Are they the Mormon doctrine? They did not, Your Honor. And doesn't that involve economic injuries? Well, you can have a financial injury without implicating the economic loss doctrine. And that's because under Mormon, the economic loss doctrine is only implicated in certain situations. And that is where there is an economic loss without any harm to one's person or property. Here we have both. We have both the exposure to lead, and we also have the damage to their service lines. But if you were to think about any medical monitoring case in general, well, what does it seek to remedy? It provides a diagnostic test for the sole purpose of determining that injury itself. So it's not so much that there's an exception to the Mormon doctrine, and it's that it just doesn't implicate the rule whatsoever. And I think the fact that medical monitoring cases have been brought successfully in this state for over 20 years is a testament to that. So your plaintiff's damage is the cost of the test, which they have not incurred? They have not yet incurred, no. That is the relief that they're seeking. All right, let's talk about Lewis some more. It's an interesting case. There's a hypothetical in Lewis that quotes Friends for All Children. Do you recall that hypothetical at all? It's about Smith and Jones. One's riding a motorbike, and he hits the other guy. Sure. And they rely on that from Friends for All Children to say that medical monitoring is an issue and says it wouldn't be covered by strictly negligence, like a regular negligence action. Somebody hits you, and you don't really have any injury, but you do have the damage of being hit by another person's car, right? Or the injury, I should say. That's the example they used as the basis for Lewis. Again, do you recall that? I do. Yeah. And does that make sense? I think so, and I think it goes back to the example that I stated before, where the remedy, the wrong that the remedy is, or that the relief is seeking to remedy. Okay, remedies do. Go ahead. Finish, Counsel. I'm sorry. Finish. Correct. So the wrong that the relief is seeking to remedy is this need for a medical test itself. And that, yes, it costs money. And so by requiring a present injury first, you'd be putting the car before the horse. Well, isn't that what torts say? You have to duty breach injury, causation, damages. I mean, that's part of your prima facie case, right? Injury? Right. And what Lewis says is that this is a compensable injury in and of itself. Continue. In fact, the similarities between this case and Lewis are staggering. I mean, both cases were class actions, and both claims sought the same relief. So Lewis should have been controlling in the court below. Let me ask you this. In Lewis, the court said that the claim for damages was not speculative. Am I right? It's a one-time test in Lewis, correct? Right. Now, in this cause of action, you prefer relief. You're asking for a trust fund to be set up to cover costs of who knows how many tests, et cetera, et cetera. Are you not? Is that speculative? Well, it's a medical monitoring program. It depends on what's necessary for the person involved. So it can be implemented in a number of ways, and that has not yet been determined. But, yes, it may involve there might be a second test. There may need to be follow-up. There might be many tests. There may be multiple tests, yes. Right. But that was one of the bases that Lewis allowed this, because it said it wasn't speculative. It's just one test. Well, I think it's not a speculative injury. Well, we don't have any injury right now. We do because there's the cost of the test. Right. There is the injury in the sense that there is a cost of the test. Okay. And there's potential physical harm as well, and that is the purpose of the medical test. The other means in which the circuit court distinguished Lewis was also equally tenuous. According to the circuit court, there's a statute, the Illinois-led Frozen In Prevention Act, that accounted for the compensable injury in Lewis. But the parties never litigated that below. It was never discussed during oral argument. And the first time it actually appeared was in the order, in Judge Mitchell's order. And if you actually look at Lewis, that act is only mentioned in passing in another section, not when it's discussing medical monitoring. So we would argue that it is not a proper basis to distinguish this case from Lewis. What about Dillon and Jensen? Do they impact the Lewis case at all? So Dillon deals with the single recovery principle. And the single recovery principle is simply not implicated here. If you think about it in terms of, well, practically speaking, medical monitoring claims will almost invariably be class actions. And class actions are recognized as exemption against claim splitting. So courts can do and have made findings to prevent res judicata of any subsequent personal injury claims. For example, in the NCAA concussions case, which was tried in the Northern District of Illinois, Judge Lee expressly reserved the rights of class members to bring personal injury claims after being tested for concussions. In another lead paint case against a toy manufacturer in the circuit court of Cook County, Judge Maki did the same. So it's... That's a circuit court case. Correct. So courts simply, they don't impose a Hobson's choice on class members to either withdraw from the class litigation or forfeit a later damages claim, which is all to say that the single recovery principle is not a basis to preclude medical monitoring relief. Can I ask you about Kerry v. Kerr-McGee again? Are you relying on that case in your argument? Well, only to the extent that it was the first case to recognize medical monitoring relief in Illinois and predict that the Illinois Supreme Court... Well, it really wasn't recognized in Illinois. The Federal Court said we predict that's what the Illinois Supreme Court would do. Correct. Has that ever happened by the Illinois Supreme Court? No. No. No. You also asked about Jensen. And Jensen only discusses Lewis briefly. It discusses that after it had already ruled that the plaintiffs in that case did not present enough evidence to survive summary judgment on a medical monitoring claim. And then they follow that up by distinguishing Jensen on the grounds that, well, according to the, excuse me, according to the Jensen court, the plaintiffs in Lewis had a present physical injury for which they were seeking diagnostic testing. Plaintiffs in Lewis. But if you think about that, that really doesn't make much sense because why would someone seek diagnostic testing to detect an injury for which they already know they have? And, in fact, it's contradicted, that claim is contradicted immediately thereafter when they quote from Lewis, in which it says the plaintiffs here seek medical monitoring to detect a possible injury. So the quote from Lewis contradicts the claim that the court in Jensen has made, and for that reason it's unpersuasive. Now I'd like to move on. If you don't have any more questions on the medical monitoring issue, I'd like to move on to the adverse condemnation claim. Judge Mitchell dismissed this claim on the grounds that the damage to plaintiff's service lines was, I believe the Latin is damage absque injuria, or damage. I love the Latin. I like that. But that basically means damage without injury, or damage without legal recourse. But what plaintiffs allege here does not fit with the examples in those cases. If you look at those cases, you'll notice that each case involves a very general kind of public nuisance. For example, noise pollution, light pollution, or proximity to some hospital. But that's not at all what plaintiffs allege here. Plaintiffs allege specific damage to a specific part of their property, that being their service line. But does their damage comply with what's designated as special in these areas, and not the same that everybody else has? Well, it's not the same as everybody else has. It may be, and we'll admit that it was substantial and that it affects a large number of homes. But it's not as if there's some arbitrary limit on the number of people that can claim inverse condemnation claims based on similar repairs done around the city. I mean, if you were to think of it from the standpoint of if the city were building an outline to the south side of Chicago, and it had to place that outline through a number of yards. Well, simply because there were 500, 1,000 homes that were affected, that wouldn't deprive them of their right to just compensation. What about the flood litigation case, though? Doesn't that counter what you're saying? Well, the flood litigation case, if I recall, had to do more with the economic loss doctrine. And they were claiming an exception to the Mormon doctrine. And so there you had the Mormon doctrine implicated because they had no property damage. They were not claiming any harm to any person or even threat of harm. These were businesses that had merely lost profits by the mere fact of the flood itself. And so in that case, they said, unless you had property damage caused by the flood, you could not seek economic losses. So with that, Your Honor, unless you have any additional questions, I'd like to reserve my time for a moment. Thank you, gentlemen. We have a few minutes for rebuttal. Good afternoon, Your Honors, and may it please the Court. Plans claims based on the city's infrastructure work are barred by their own admissions and  I apologize, Your Honor. I'm going to take your name because this is being recorded and on the tape, we want to know who's talking, so you have to state your name. I apologize, Your Honor. Chris Heck on behalf of the city of Chicago. Good afternoon, and may it please the Court. Plans claims based on the city's infrastructure work are barred by their own admissions and allegations. For their negligence claims seeking medical monitoring, plans have admitted that they do not have a present injury. In their briefing below, they admitted that they do not, quote, suffer from an existing physical injury or illness, end quote. In the arguments that took place in the circuit court, the circuit court asked them, quote, you readily concede that there is no present injury alleged in your complaint, end quote. And Plans counsel answered, correct. And that same language appears in the circuit court's order here, and Plans do not challenge that they have readily conceded that they lack a present injury. For their inverse condemnation claim, Plans will not dispute that they are alleging damages on behalf of people in more than 1,600 different areas in the city of Chicago where the city has performed border infrastructure projects, nor do they dispute they are seeking damages based on the city's replacement of existing border infrastructure. Given these are- However, isn't this a situation where you have residents being exposed to higher radiation due to the defendant's product and actions, and they don't have a present injury in the sense that their levels are very high, but they now find themselves in a situation where they do have a present damage for the fact that they now need monitoring during their lifetime so that they will know if and when they reach a point of permanent damage. I would say that that does not constitute an injury under Illinois law, and that goes to Williams v. Manchester where your Honor talked about exposure, and that's exactly what we had in that case. You had a fetus being exposed to x-rays, to radiation, and the plaintiff in that case argued that the exposure to radiation and the increased risk of harm following it was a present injury, and the Illinois Supreme Court held that it was not. What the Illinois Supreme Court gave as an example of present injury was a portion of a catheter being struck near the plaintiff's heart, and what Williams tells us is that exposure alone is not a present injury, and there is an increased risk of harm of present injury under Illinois law. And so there are two fundamental facts that I've talked about earlier. On that basis, plaintiff's claims are borrowed under multiple lines of case law. We're starting with Jensen. Plaintiffs are arguing repeatedly that Jensen is addicted, and it simply is not true, as shown by reviewing the decision. What happened in Jensen was very similar here. You had a plaintiff who alleged he was exposed to a hazardous substance, a drug that could cause completely fatal injuries, and he did not have any present injuries, and he wanted to seek a claim for medical monitoring. The defendants argued that Illinois states had never recognized a claim for medical monitoring. However, here we have a situation where innocent citizens, now being subject, if they're managing their life reasonably and properly, they know they have to go for monitoring. They know they have to keep an eye on the level of this contaminant placed by the defendant. They have to continue for a lifetime to monitor, and that's an expense. It's a known expense that they'll have to do, and I'm having difficulty accepting your argument that that's not adequately alleged in their complaint, and this is just a 615 dismissal. It seems adequate in their complaint that they've alleged a present danger, a present expense that they'll have to endure, and they'll have to endure it in the future. So when we talk about the circuit court, I think a brief consideration of the Lewis case. The Lewis case is definitely applicable, definitely controlling. Tell me why not. Well, to start with that question first, Your Honor, I would say it's not controlling under Jensen, where Jensen rejects plaintiff's interpretation of Lewis. Jensen clearly held, and so back in Jensen, the plaintiffs there argue that based on Lewis, Illinois had recognized a remedy of medical monitoring without a present injury,  we consider Lewis to be inaskable because there, unlike here, the plaintiffs sought compensation for medical testing to detect a present physical injury. And then Jensen went on to hold that a plaintiff cannot recover for, quote, a claim for medical monitoring for potential future harm where no present injury is shown, end quote. And so I think Jensen establishes what Lewis means. When we talk about present expense that Your Honor mentioned a few times, we'll go to that. And I think in two cases, Williams v. Manchester and then Cooney. So with Williams v. Manchester, the damages alleged there were the increased risk of harm, which is a cost, a sort of damage that has been recognized by the Illinois Supreme Court in Dillon. So there's no question that that is a sort of recoverable damages that one can obtain if one satisfies all the requirements of a negligence requirement. And yet in Williams, the court said that even though this fetus had had that expense and had the damages of an increased risk of harm, that it had not shown a present injury by the exposure to radiation or whatever had this substance. In this court, in Cooney, you had plaintiffs who their information had been, their personal private information had been exposed to a wide number of people. They had argued that their credit was at risk, and they said that we need to buy credit monitoring to make sure that our identity got stolen. And once again, this court held that that was not the sort of cognizable economic loss necessary for an injury. Counsel, do you think that Moorman and the single recovery principle apply in this case? Yes, Ron, I think both of them apply. For Dillon, the plaintiffs have argued here that Dillon doesn't apply to class certification, but there's no Illinois case interpreting Dillon that holds that. Dillon, instead, is very strong on the single recovery principle. And what plaintiffs have argued in their briefs is that Dillon doesn't apply to unaccrued damages or injuries, and that's simply incorrect under both the plain language of Dillon as well as the facts of Dillon. The plain language of Dillon, Dillon holds on page 502 that, quote, there cannot be successive actions brought for a single tort if damages in the future are suffered, but the one action must embrace prospective as well as accrued damages. And so Dillon's clearly saying there that whether damages are accrued or they're prospective or unaccrued, they have to be brought in that single action. And for Dillon's facts, the injuries or damages that were sought at Dillon were things like a 20% or lower risk of future infection, a 5% or lower risk of future arrhythmia. So these were sorts of injuries that had not accrued, may not ever accrue, and if they accrued, they would not currently be in the future. Even if they were unaccrued, Dillon said those had to recur in a single action. So for medical monitoring, I mean, again, I think the plaintiffs here, you know, they are seeking the economic loss of the cost of this monitoring. And we know from two cases that this idea of being exposed to water contamination somehow avoids economic loss was incorrect. And one of those, Brian mentioned previously, was in Chicago flood. There was an underwater tunnel that was pierced. Water came into the tunnel, flooded the various plaintiffs' buildings, and they saw various damages because their buildings had been flooded. That included profits, lost revenues, and so forth. The Illinois Supreme Court held that those damages could not be recovered under the economic loss rule. The other case was a second district decision in Donovan where the plaintiffs argued that the water had not been properly chlorinated and therefore had coliform and other dangerous bacteria in it. Again, the court there held the economic loss rule applied to bar plaintiffs' claims for water filtration and bottled water. Plaintiffs for the economic loss rule set a case called AC&S. And just to tie that off, that case involved asbestos, but what the court relied on there was the fact that the asbestos was a dangerous substance that had been built into the buildings by the defendants. It did not involve water coming into the buildings as in Chicago flood or Donovan. Before I leave American Margarine as a remedy, one issue I just wanted to hit is in terms of what other cases say. When you look at the Michigan Supreme Court case in Henry, the Kentucky Supreme Court case in Wood, those are cases that look back on their prior cases. Our prior cases, we've distinguished between the present injury and damages. We've acquired a physical present injury to a resident evidence claim. Therefore, we're going to hold that there is no medical margarine remedy without a present injury. And, of course, that logic is the same as what is in the Illinois Supreme Court case of Wood v. Manchester, and we would say that it leads to the same conclusion as the courts have reached in Henry, Wood, and the various other cases we cite. So moving on to inverse condemnation. We're almost out of time. Okay. I'll be very quick. In terms of what's distinguished between special damages and damages sustained by the public generally there, plaintiffs will argue that that's an unclear distinction. I'd say distinctions are often unclear in the law. They're fleshed out by case law. What we do know is where you have people spread over many areas or blocks, that those people do not have special damages. They have damages sustained by the public generally. Likewise for Belmar, plaintiffs say that they have a specific injury here, but the plaintiff in Belmar has a specific injury as well. His business had been destroyed by the lights that had been stalled by the Illinois Highway Commission. The plaintiff there had operated a drive-in movie theater that could no longer show movies. And the same thing there. One last point is that plaintiffs have given the example of an airline being built through the south side. The issue there is that there are two different sorts of theories under the Illinois taking statute. One is actual taking of property. The other one is damages. Here we're not talking about taking of property. As in the example of the airline being constructed through the south side, we're talking about damages. And in the case of damages, the court has held, the Illinois Supreme Court has held, that we have some necessary incentive to property ownership. You cannot recover damages under the takings clause. And here that clearly applies to the existing infrastructure that any resident would know would have to be repaired. Your Honors, thank you very much. And we ask that you affirm the circuit court. Thank you. Go ahead. Thank you. Mr. Vasquez, brief rebuttal please. Thank you, Your Honors. I have just two points I'd like to make. First, Mr. Hatch brought up the Donovan case, which is another case involving the Mormon doctrine. In that case, what you have is you have an actual contract. And they're suing for economic losses related to that contract. And so, again, you have an exact situation, an exact scenario where the doctrine is implicated because you actually have disappointing commercial expectations related to the delivery of services. And so there they were attempting, once again, to get around the economic loss doctrine via an exception, whereas here it simply doesn't apply. I'd also like to discuss this notion of the difference between increased risk of harm versus what medical monitoring seeks. And I think that was explained very well by Justice Hoffman in the Lewis case. But plaintiffs have never alleged here that this is a case for compensation for increased risk of harm. If you look at Williams, the facts of Williams, what was going on there was she was trying to bring a claim under the wrongful death statute, but it needed to show a present physical injury to be able to do so. And so she alleged, well, there's increased risk of harm to the fetus, and that in and of itself is a physical injury. And the court was simply saying, well, no, you have this situation. Going back to what Dillon, the case that Mr. Heck cited before, where increased risk of harm is a situation where, well, if you bring a personal injury case, you must bring increased risk of harm as a part of its damages calculation, and it cannot be brought on its own. Plaintiffs do not bring a case for increased risk of harm. They're not seeking compensatory damages. They're seeking medical monitoring relief, which is something altogether different. And unless you have any further questions, Your Honor, plaintiffs would ask that the judgment of the trial court be reversed and the case remanded for further proceedings. Thank you. Thank you, counsel. The court will take the matter under advisement, and we are adjourned.